IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM WARREN and SUSAN MILLER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 2:13-00084-KD-M |
| JANET HILTON, an individual, and TURNING LEAF MEDICAL, INC., an Alabama corporation, and ALABAMA MEDICAID AGENCY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

This action is before the Court on the second motion for default judgment filed by plaintiffs William Warren and Susan Miller (doc. 26). Upon consideration, and for the reasons set forth herein, the motion is **GRANTED** in part and **DENIED** in part.

I. <u>Background and procedural history</u>

Plaintiffs filed their complaint against Janet Hilton individually and Turning Leaf Medical, Inc. alleging one cause of action for breach of guaranty agreement (doc. 1).[1] Plaintiffs allege that non-party Dr. William Michael Stevens executed a payment agreement in their favor in the amount of $350,000.00 and that Hilton and Turning Leaf executed a guaranty of Stevens' payment and performance obligations (docs. 1, 10, 33; Exhibits A & B).[2] Plaintiffs

---

[1] Hilton answered the complaint, filed an amended answer, and then filed a suggestion of bankruptcy (docs. 6, 18, 27). The action has been stayed as to Hilton individually (doc. 29).

[2] The payment agreement and guaranty were executed as part of Dr. Stevens' Chapter 11, Plan of Reorganization. *See In re Stevens,* Bankruptcy Action No. 11-04639-MAM (U.S. Bankr. Ct. S.D. Ala. 2011) (Doc. 164, executed documents; doc. 163, Second Amended (Continued)

allege that upon demand for payment, Turning Leaf did not pay the debt owed by Stevens and therefore, breached the guaranty agreement.

Plaintiffs attempted to serve the complaint upon Turning Leaf by personal delivery to "Jennifer Blozik, Nurse, who is designated by law to accept service of process on behalf of" Turning Leaf and by "posting a copy of the summons at the home of the President Janet Hilton . . ." (doc. 5). Then, they filed an application for entry of default and motion for default judgment (doc. 9). Plaintiffs also filed their first amended complaint wherein they brought Count One for breach of contract and added Count Five for fraud against Turning Leaf and Hilton (doc. 10). They also added Count Two for declaratory judgment, Count Three for detinue and Count Four for injunctive relief against the Alabama Medicaid Agency. (*Id.*)[3] Upon review of the application for entry of default, the Court found that plaintiffs failed to show proper service upon Turning Leaf and entered an order denying the application (doc. 12). In the order, the Court also explained that the first amended complaint superseded the original complaint and was now the operative document in this action.

Subsequent thereto, plaintiffs served an alias summons, the complaint, and the first amended complaint upon Turning Leaf by personally serving a copy upon Janet Hilton, its President and registered agent (doc. 16, return of service; doc. 12). Plaintiffs again applied for entry of default for Turning Leaf's failure to answer or otherwise defend the first amended complaint (doc. 26). The Clerk entered default (doc. 28). Plaintiffs also move the court for default judgment against Turning Leaf in the total amount of $363,344.09 (doc. 26). To date,

---

Chapter 11 Plan).

[3] The AMA's motion to dismiss is pending before the Court (doc. 35).

Turning Leaf has not appeared nor has it answered or otherwise defended this action.

II. Subject matter jurisdiction

Upon review of the first amended complaint, the Court found certain deficiencies in the plaintiffs' jurisdictional allegations regarding diversity of citizenship as to plaintiff Miller and defendant Turning Leaf. The Court ordered plaintiffs to file a second amended complaint to properly allege diversity jurisdiction (doc. 32). Plaintiffs filed their second amended complaint wherein they allege that Miller is a citizen of the state of Nevada[4] and Turning Leaf is an Alabama corporation with its principal place of business in Alabama (doc. 33). The Court finds that it has subject matter jurisdiction based on the allegations of diversity of citizenship and an alleged amount in controversy in excess of the jurisdictional amount. 28 U.S.C. § 1332; *System Pipe and Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir.2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.").

III. Personal jurisdiction

The Court must address service of process and personal jurisdiction because a default judgment would be invalid and ineffective unless the Court has personal jurisdiction over the defendant Turning Leaf. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir.1999); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("an *in personam* judgment entered

---

[4] The second amended complaint was signed by plaintiffs' counsel and thus subject to Rule 11(b)(3) of the Federal Rules of Civil Procedure which provides that "[b]y presenting to the court a pleading ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the factual contentions have evidentiary support. . . ". Fed. R. Civ. P. 11(b)(3). Therefore, the Court will accept these jurisdictional allegations as true.

without personal jurisdiction over a defendant is void as to that defendant") (citations omitted); *Whitney Bank v. Davis-Jeffries-Hunold, Inc.*, 2012 WL 2808301, *1 (S.D. Ala. July 10, 2012). Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation must be served in a "judicial district of the United States" and this may be accomplished "by delivering a copy of the summons and the complaint to an officer . . . or any other agent authorized by appointment or by law to receive service of process[.]" Turning leaf was served by personal service upon its President Janet Hilton in Selma, Alabama (doc. 16). Thus, the Court finds that it has personal jurisdiction over defendant Turning Leaf.

IV. Notice to Turning Leaf

In addition to personal service of the first amended complaint, the Clerk mailed a copy of the Clerk's entry of default and a copy of the application for entry of default and motion for default judgment to Turning Leaf in care of President Hilton at her address of record (doc. 28). Hilton has received electronic notice of filing of the application for entry of default, the Clerk's entry of default, the motion for default judgment, the Court's order instructing plaintiffs to properly allege citizenship, and the second amended complaint through her counsel of record who has appeared to represent Hilton in her individual capacity (docs. 26, 28, 32, 33). Thus, the Court concludes that no further notice is warranted.

V. Choice of law

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir.2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Applying the principle of *lex loci contractus*, Alabama courts have held that the laws of the state where the contract is made will govern, unless the parties choose a specific

state's laws. *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala.1991). The guaranty agreement contains a choice of law provision which states as follows: "This guaranty and the rights and obligations of the guarantors and the judgment creditor hereunder shall be governed by and construed in accordance with the laws of the State of Alabama" (doc. 10-2, Exhibit B). The parties specifically contracted for application of the laws of the State of Alabama and executed the guaranty in this state. Thus, the laws of the State of Alabama will apply.

VI. Analysis

Plaintiffs move the Court to enter default judgment against Turning Leaf in the principal amount of $332,083.61, interest of $26,339.23, late fees of $2,800.00, and a reasonable attorney fee of $2,121.25 for a total of $363,344.09 (doc. 26). Generally, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter a default judgment. Fed.R.Civ.P. 55(b)(1). However, neither the factual allegations in the complaint nor the counts against Turning Leaf – Count One for breach of contract and Count Five for fraud – *i.e*, the "claim", contain an allegation of a sum certain due to plaintiffs or a sum that can be made certain. The "sum" claimed is provided by way of affidavits attached to the motion for default judgment (doc. 25, p. 3-6). Thus, this action falls under the second part of Rule 55(b), which provides: "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).[5]

---

[5] Although "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter[]", the Court finds that there is sufficient evidence in the record for the Court to reach a decision. Fed. R. Civ. P. 55(b)(2).

The Court of Appeals for the Eleventh Circuit has explained that although the entry of default "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact.' " *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l. Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975). citations and internal quotations omitted). "The defendant, however, 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Id.* Therefore, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations of the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id*. (italics in original)

A. Count One

Under Alabama law, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Synovus Bank v. The Vessel ACCU V*, 2012 WL 930246, *2 (S.D. Ala. March 19, 2012) (slip copy) (quoting *Delro Industries, Inc. v. Evans*, 514 So.2d 976, 979 (Ala.1987)); *Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 225–226 (Ala.1992). Plaintiffs allege that non-party Stevens executed a payment agreement in favor of plaintiffs wherein he agreed to pay a total of $350,000.00 with an initial payment of $10,000.00, monthly payments of $8,000.00, interest at the rate of fifteen percent (15%), and a late fee of five percent (5%) (doc. 10, first amended complaint, Exhibit A, payment agreement). They also allege that Stevens made the initial payment of $10,000 "and a few monthly payments" but then defaulted. (*Id.*) Plaintiffs allege

6

that Turning Leaf executed a guaranty agreement wherein it guaranteed Stevens' payment (*Id*., Exhibit B, guaranty). They also allege that Turning Leaf is in default of its obligations because it failed to pay the amount due after plaintiffs made demand for payment under the terms of the guaranty. *(Id*.).

Because the guaranty is continuing, plaintiffs must establish the additional element of notice to Turning Leaf of Stevens' default unless Turning Leaf waived notice in the guaranty agreement. *See Sharer*, 600 So.2d at 226; *Delro Industries*, 514 So.2d at 979; *see also RBC Bank v. CMI Electronics, Inc*., 2010 WL 2719096, *2 (M.D.Ala. July 8, 2010) (slip copy). Although plaintiffs did not specifically plead that the guaranty contained a waiver of notice, waiver is apparent because the guaranty states that "[e]ach of the Guarantors waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notice of dishonor, and notice of acceptance of this Guaranty . . ." (doc. 10-2, p. 2).

Upon consideration of the foregoing, the Court finds that Plaintiffs' complaint sets forth sufficient well-pleaded factual allegations of the existence of Turning Leaf's guaranty, Stevens' default on his payment agreement, and Turning Leaf's non-payment under the terms of the guaranty, which the Court must accept as true, to state a viable cause of action under Alabama law for a breach of guaranty. Since the well-pleaded allegations are deemed admitted by Turning Leaf's default and the allegations are sufficient to establish a cause of action, the Court finds that Turning Leaf is liable to plaintiffs as to Count One.

B. <u>Count Five</u>

Rule 9(b) of the Alabama Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

7

Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The Committee Comments to the 1973 Adoption of Rule 9 further explain that

> this special requirement as to fraud and mistake does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of. The pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. ... But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. ... [I]t should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint if the pleading gives fair notice to the opposing party...."

Ala. R. Civ. P. 9(b). "The purpose of this rule is to give fair notice to the opposing party." *Sverdrup Technology, Inc. v. Robinson.* 36 So.3d 34, 44 (Ala. 2009) (citation omitted).

Plaintiffs' allegations of fraud state that "[a]t the time of the signing of the Guaranty, Turning Leaf and Hilton had no intention of paying the obligations of Stevens pursuant to the Guaranty, but signed in order that Stevens could continue to work for the practice and generate profits, while falsely representing to Plaintiffs their willingness and capability to pay the debt in the event that Stevens could not or would not" (doc. 10, p. 6-7). Thus, Count 5 appears to be a promissory fraud claim, *i.e.*, a claim "based on a promise to act . . . in the future". *Ex Parte Michelin North America, Inc.*, 795 So. 2d 674, 678 (Ala. 2001). If Stevens did not pay pursuant to the payment agreement, then at some point in the future, Turning Leaf would pay the plaintiffs.

A promissory fraud claim requires proof of the elements fraud - "1) a misrepresentation of a material [existing] fact; 2) made willfully to deceive, recklessly, without knowledge or mistakenly; 3) that was reasonably relied on by the plaintiff… ; and 4) that caused damages…." *Bruschwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000), plus two other elements - - 1) proof that, at the time of the misrepresentation, the defendant had the intention not to perform the act

promised, and 2) proof that the defendant had an intent to deceive." *Allied Sales & Serv. Co. v. Global Indus. Tech., Inc.*, 2000 WL 726216, *9 (S.D. Ala. May 1, 2000). Thus, to recover for fraud "predicated on a promise to perform or abstain from some act in the future ... the evidence [must] show[] that, at the time the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." *Purcell Co., Inc. v. Spriggs Enterprises, Inc.*, 431 So.2d 515, 519 (Ala.1983).

The Court accepts as true plaintiffs' allegation that at the time of signing the guaranty Turning Leaf misrepresented the material fact that it had the capacity and was willing to pay should Stevens default, that plaintiffs relied upon that misrepresentation and accepted Turning Leaf's guaranty, and were damaged when Turning Leaf did not pay. As to the two additional elements for promissory fraud, the Court accepts as true plaintiffs' allegation that at the time Turning Leaf signed the guaranty, it had no intention of paying if Stevens defaulted and had an intent to deceive the plaintiffs as evidenced by its misrepresentation that it had the capacity and was willing to pay should Stevens default.

Upon consideration of the foregoing, the Court finds that Plaintiffs' complaint sets forth sufficient well-pleaded factual allegations, which the Court must accept as true, to establish a cause of action for fraud. Since the well-pleaded allegations are deemed admitted by Turning Leaf's default and the allegations are sufficient to establish a cause of action, the Court finds that Turning Leaf is liable to plaintiffs as to Count Five.

C. <u>Damages</u>

The Court must now determine whether plaintiffs have provided sufficient proof of damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations

relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n. 5 (S.D. Ala. 2007). Thus, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Additionally, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In the complaint, plaintiffs brought Count One for breach of contract, specifically the guaranty agreement, and demanded judgment against Turning Leaf and Hilton, separately and severally, for all unpaid obligations due under Stevens' payment agreement including interest, late fees, and a reasonable attorneys' fees (doc. 10, p. 3-4). In the factual allegations, plaintiffs allege that Stevens executed a payment agreement in the principal sum of $350,000, made the initial payment of $10,000 "and a few monthly payments" of $8,000.00 but then defaulted (doc. 10, p. 3). Plaintiffs provide the Court with a copy of the payment agreement that confirms the allegations as to the principal, initial payment, monthly payments, interest and late fees (doc. 10, Exhibit A). According to plaintiffs' bookkeeper, the principal balance of Stevens' debt is $332,083.61, interest has accrued in the amount $26,339.23, and late fees have accrued in the amount of $2,800.00 for a total of $361,222.84 (doc. 26, p. 5-6, Affidavit of Linette Carroll). Upon review of the complaint, the payment agreement, and the bookkeeper's affidavit, the Court finds that plaintiffs have provided sufficient proof of the balance due on Steven's debt and that plaintiffs are due to recover damages from Turning Leaf in the total amount of $361,222.84.

D. Attorneys' fee

Plaintiffs also seek a reasonable attorneys' fee of $2,121.25 (doc. 26, p. 5-6). Under

Alabama law, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Kiker v. Probate Court of Mobile County*, 67 So.3d 865, 867 (Ala. 2010) (citations omitted). The Court may consider the following factors when deciding whether the attorneys' fee sought is reasonable: "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552–553 (Ala. 2004) (citation omitted). Generally, the "starting point" is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir.2008) (internal citations and quotation marks omitted). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id*. The court may adjust the lodestar depending upon the facts of each case. *Id*. at 1351.

Plaintiffs did not provide any evidence to support their assertion that the attorneys' fee is reasonable. Plaintiffs provide the Court with their counsel's affidavit wherein counsel states that plaintiffs are due reasonable attorneys fees in the amount of $2,121,25 (doc. 26, p. 4). But, this conclusory, unsupported statement is not sufficient evidence from which the Court could ascertain whether the hourly rate invoiced and the hours expended were reasonable. Thus, the motion for default judgment is denied as to plaintiffs' claim for attorneys' fees.

VII. Conclusion

For the foregoing reasons, plaintiffs' motion for default judgment is granted in part and denied in part. A default judgment shall be entered in favor of plaintiffs William Warren and Susan Miller and against defendant Turning Leaf Medical, Inc., in the total amount of $361,222.84.

The Clerk is directed to mail a copy of this order to Turning Leaf at its address of record.

DONE and ORDERED this the 1st day of August 2013.

> **/s/ Kristi K. DuBose**
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**